IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


MARCI'S FUN FOOD, LLC,      )
         Plaintiff,       )
                      )
        v.            )      Civil Action No. 2:10-188
                      )
SHEARER'S FOODS, INC. and    )      Magistrate Judge Bissoon[1]
POPPEE'S POPCORN, INC.,      )
         Defendants.    )


## MEMORANDUM AND ORDER

## I.   MEMORANDUM

Plaintiff, Marci's Fun Food, LLC, brings this action against Defendants, Shearer's Foods,

Inc. ("Shearer's") and Poppee's Popcorn, Inc. ("Poppee's"), alleging that Defendants violated the

Lanham Act, violated the Pennsylvania Uniform Trade Secrets Act, misappropriated equipment

and trade secrets, engaged in unfair competition, breached contractual obligations, breached the

duty of good faith and fair dealing, tortiously interfered with business relationships and

committed acts of fraud and intentional and negligent misrepresentation when they induced

Plaintiff to enter into an agreement for the production of its famous kettle corn product, then

terminated the agreement but continued to produce Plaintiff's kettle corn as their own product

and did not return Plaintiff's equipment as required by the agreement.

Presently before this Court for disposition are two motions to dismiss, one submitted by

Shearer's (Doc. 8) and the other by Poppee's (Doc. 25). For the reasons that follow, the motions

---

[1]     By consent of the parties, the undersigned sits as the District Judge in this case. *See*
Consent forms (Docs. 18, 19, 42).

will be granted with respect to Counts II, III, V, VI and X, and denied with respect to Counts I, IV, VII, VIII, IX, XI and XII.

<u>Facts</u>

Plaintiff is a corporation with its principal place of business in Moon Township, Pennsylvania that, from 1999 to 2007, manufactured a food product labeled "MARCI'S OLD FASHIONED KETTLE KORN" that was famous as a food, brand and product throughout Ohio and Western Pennsylvania. (Compl. ¶¶ 1, 5.) Plaintiff states that, in development of this product, it perfected an idea for a food manufacturing process that was original, unique, exclusive, not in the public domain, and kept secret. Plaintiff made a great and substantial investment of time, effort and money in creating and developing the kettle corn and in building a distribution network for it. (Compl. ¶¶ 6-7.) Plaintiff's kettle corn was distributed throughout Western Pennsylvania and Ohio and had a well established customer base. (Compl. ¶ 8.)

In December, 2006, Shearer's approached Plaintiff and initiated negotiations to produce the kettle corn on Plaintiff's behalf. On or about December 12, 2006, Plaintiff and Shearer's entered into a Mutual Confidentiality and Non-Disclosure Agreement (the "Confidentiality Agreement") in which Shearer's, among other things, agreed to maintain confidentiality and not disclose Plaintiff's confidential information, which was defined as:

> business plans, prospects, operations, financial structure, ideas, product formulations, and production processes, which (i) is disclosed by [Plaintiff] or its affiliates to [Shearer's] or its affiliates, indicating its confidential or proprietary nature, or (ii) is developed during the relationship between the parties and, if disclosed to [Plaintiff's] competitors, would give or increase the advantage of the [Plaintiff's] competitors over the [Plaintiff] or diminish the [Plaintiff's] advantage over its competitors.

(Compl. ¶ 12 & Ex. 1 ¶ 1.)

Thereafter, Shearer's attempted to make the kettle corn on its own equipment, but failed to make a kettle corn product that met Plaintiff's standards of quality with respect to process, food quality, labeling and packaging. Shearer's then approached Plaintiff to propose purchasing the equipment Plaintiff had used to make the product and an oral contract was formed to sell the equipment to Shearer's for an amount over $60,000.00. (Compl. ¶¶ 13-15.)

On April 17, 2007, the parties entered into a Production Agreement, wherein Shearer's would produce kettle corn for Plaintiff and Plaintiff would then sell the product to its previously well-established list of wholesalers and retailers. (Compl. ¶ 16 & Ex. 2.) Thereafter, Shearer's produced the kettle corn product at the North Ridgeville, Ohio plant that had previously been owned and operated by the corporate entity known as Poppee's, but which had been purchased by Shearer's in 2006. Poppee's was then operating as a wholly-owned subsidiary of Shearer's. (Compl. ¶¶ 9, 17.) Plaintiff alleges that Poppee's repeatedly, deliberately and intentionally ignored its advice and admonitions regarding product quality and packaging and labeling errors. (Compl. ¶ 18.)

Sometime after April 2007, Shearer's sold the subsidiary entity that produced the kettle corn at the Ridgeville, Ohio location, thereby essentially reconstituting the corporate and/or business entity that operated as "Poppee's" or a similar name, prior to its purchase by Shearer's in 2006. Plaintiff asserts that, as a result of this transaction, Poppee's assumed the duties, rights, responsibilities and obligations that Shearer's had assumed under the Confidentiality Agreement and the Production Agreement and that Shearer's remained liable in its own right under these agreements. (Compl. ¶¶ 20-21.) Plaintiff further contends that Poppee's assumed a contractual duty to make kettle corn of food quality and packaging and labeling standards previously set by

Plaintiff with its production (Compl. ¶ 22), and that the "sale and purchase of the POPPEE'S subsidiary essentially reconstituted POPPEE'S into its pre-SHEARER'S purchase form thus utilizing the same principals and employees that it had prior to its purchase by SHEARER'S, also incorporating the additional MARCI'S equipment into its production facility." (Compl. ¶ 23.)

On or about February 11, 2008, Shearer's notified Plaintiff that it was cancelling the Production Agreement. (Compl. ¶ 24.) Plaintiff alleges that, after this cancellation, Poppee's continued to produce a kettle corn product for sale and distribution by Shearer's that was identical to Plaintiff's product but had a different label and packaging.[2] The product was identical in that it bore the same food qualities and essential product identity as that produced by Plaintiff prior to its substandard production by Poppee's. Plaintiff alleges that these actions "caused, continue to cause confusion and mistake, and have deceived purchasers and the public that 'MARCI'S OLD FASHIONED KETTLE KORN' is the defendants' own product." (Compl. ¶ 25.) Plaintiff further alleges that these actions constituted a breach of the Confidentiality Agreement (because Shearer's revealed Plaintiff's confidential information to Poppee's); a breach of paragraph 8 of the Production Agreement (because the production compromised Plaintiff's business strategies, plans, inventions, discoveries and trade secrets); and a breach of paragraph 7 of the Production Agreement (because upon cancellation, Shearer's and Poppee's were under a duty to return the equipment Shearer's had previously purchased from Plaintiff to produce the kettle corn). (Compl. ¶¶ 26-28.)

---

[2]     Later in the Complaint, Plaintiff specifically alleges that Defendants relabeled the kettle corn product as a "Poppee's Popcorn" product. (Compl. ¶¶ 37(d), 46(d), 49(d), 53(d), 56(d), 59(d), 62(g).)

Plaintiff alleges that it was deprived of its equipment and cut off from distributing its products and as a result its brand name has been destroyed, causing it to suffer pecuniary loss. (Compl. ¶ 29.)  Plaintiff further alleges that, from the very beginning of negotiations between the parties, Shearer's never bargained in good faith and sought to destroy and injure the "MARCI'S OLD FASIONED KETTLE KORN" brand name.  (Compl. ¶ 30.)  Plaintiff alleges that the cancellation letter also breached the Production Agreement by failing to allow sufficient time to meet the 2008 Purchase Commitments set forth as Exhibit B thereunder.  (Compl. ¶ 31.)

Finally, Plaintiff alleges that:

In the alternative, defendant POPPEE'S['] aforementioned deliberate, intentional act of ignoring the admonitions and/or direction of MARCI'S with regard to product quality and labeling and packaging errors created poor product quality and lead [sic] directly to lower orders from MARCI'S['] previously established customers, and directly sabotaged "MARCI'S OLD FASHIONED KETTLE KORN" brand name.

The [CONFIDENTIALITY AGREEMENT] and [PRODUCTION] AGREEMENT at issue were made, without good faith, under fraudulent and deceitful circumstances, consisting of promises the defendants never intended to keep, with the intent to produce plaintiff MARCI'S to enter into said contracts to its detriment; as such, said contracts are unconscionable and are contracts of adhesion, and any terms, including but not limited to the statute of limitations and damages, that limit plaintiff's recovery beyond what it is legally entitled must be deleted from said contracts and otherwise held unenforceable, and all other terms interpreted and enforced in a light that is most favorable to the plaintiff.

(Compl. ¶¶ 32-33.)

Procedural History

Plaintiff filed this action on February 11, 2010.  Jurisdiction is based on the federal question presented by the Lanham Act claims, 28 U.S.C. §§ 1331 and 1338(b),[3] which constitute

---

[3]     The Lanham Act also contains a jurisdictional clause, see 15 U.S.C. § 1121(a).

Count VII ("passing off"), Count VIII (false advertising), Count IX (violation and/or usurpation of common law trademarks) and Count X (dilution by blurring or tarnishment). The complaint also contains state law claims for misappropriation (Count I), breach of contract (Count II), breach of the duty of good faith and fair dealing (Count III), intentional misrepresentation, fraud and deceit (Count IV), negligent misrepresentation (Count V), tortious interference with a business relationship (Count VI), unfair competition/unjust enrichment under Pennsylvania common law (Count XI) and violation of the Pennsylvania Uniform Trade Secrets Act, 12 Pa. C.S. §§ 5301-08 (Count XII). On April 12, 2010, Shearer's filed a motion to dismiss (Doc. No. 8) and also a motion to transfer (Doc. No. 10). On May 12, 2010, Poppee's filed a motion to dismiss (Doc. No. 25) and a motion to change venue (Doc. No. 26), which adopted the arguments made by Shearer's in its motions.[4]

Standard of Review

The Supreme Court has recently stated that:

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [Bell Atlantic Corp. v.] Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Id., at 555, 127 S.Ct. 1955 (citing Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id., at 557, 127 S.Ct. 1955.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at

---

[4]     By Memorandum Order dated September 8, 2010 (Doc. No. 43), the Court denied the motions to transfer venue.

570, 127 S.Ct. 1955.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id., at 556, 127 S.Ct. 1955.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Ibid.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Id., at 557, 127 S.Ct. 1955 (brackets omitted).

Ashcroft v. Iqbal, 556 U.S. __, 129 S.Ct. 1937, 1949 (2009).

The Court of Appeals for the Third Circuit has stated that:

To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record....  [In addition,] a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.

Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)

(citations omitted).  Thus, the two agreements, which are attached to the complaint and

referenced therein, may be considered without converting the motions into motions for summary

judgment.

Lanham Act Claims (Counts VII, VIII, IX, and X)

Plaintiff alleges four claims under the Lanham Act, namely: "passing off" (Count VII),

"false advertising" (Count VIII), "violation and/or usurpation of common law trademark" (Count

IX) and "dilution by blurring and/of dilution by tarnishment" (Count X).  Counts VII, VIII, and

IX are presumably brought under 15 U.S.C. § 1125(a), and Count X is presumably brought under

15 U.S.C. § 1125(c).  Defendants argue that all of these claims should be dismissed because

Plaintiff "sets forth no factual allegations regarding any improper use of its marks or other false

7

representations." (Defs.' Br. (Doc. 9) at 16.)[5]  Specifically, Defendants assert that the Lanham Act protects trademarks and Plaintiff has not alleged any trademark.[6]  (Id. at 17.)

## *Claims Under 15 U.S.C. § 1125(a) (Counts VII, VIII, and IX)*

The Lanham Act does not require a plaintiff to plead that it owns a trademark to state a claim for a violation of 15 U.S.C. § 1125(a).  On the contrary, the Supreme Court has stated that: "While much of the Lanham Act addresses the registration, use, and infringement of trademarks and related marks, § 43(a), 15 U.S.C. § 1125(a) is one of the few provisions that goes beyond trademark protection."  Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 28-29 (2003).  Thus, Defendants' contention that Plaintiff's claims under 15 U.S.C. § 1125(a) (Counts VII, VIII, and IX) should be dismissed for failure to plead a trademark fails.

Defendants also assert that Plaintiff made no allegations of "advertising" and no allegations that Defendants used "'any word, term, name, symbol, or device, or any combination thereof' associated with Marci's in selling kettle corn after termination of the Production Agreement."  (Defs.' Br. at 18-19.)  But 15 U.S.C. § 1125(a) does not require use of a "word, term, name, symbol, or device, or any combination, . . ." associated with the plaintiff.  Section 1125(a) requires use of:

> any word, term, name, symbol, or device, or any combination

---

[5]     Because Poppee's adopted and incorporated by reference Shearer's Motion to Dismiss and Brief in Support, (see Doc. 25), this Court will refer to Shearer's Brief as "Defendants' Brief."

[6]     Because Defendants have not raised any other issues regarding Plaintiff's Lanham Act claims in their brief, this Court will not address any other potential flaws with Plaintiff's Lanham Act claims at this stage.  Additionally, this Court will not address Plaintiff's discussion of trade dress protection under the Lanham Act, (Pl.'s Br. (Doc. 30) at 16-17), as Plaintiff's Complaint makes no allegations regarding trade dress and Plaintiff's discussion of trade dress is not responsive to any arguments raised by Defendants.

> thereof, or any false designation of origin, false or misleading
> description of fact, or false or misleading representation of fact,
> which-
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive
> as to the affiliation, connection, or association of such person with
> another person, or as to the origin, sponsorship, or approval of his
> or her goods, services, or commercial activities by another person,
> or
>
> (B) in commercial advertising or promotion, misrepresents the
> nature, characteristics, qualities, or geographic origin of his or her
> or another person's goods, services, or commercial activities . . .

15 U.S.C. § 1125(a)(1).

In this case, Plaintiff alleges that Defendants "repackaged the original MARCI'S Kettle Korn product and sold it as a POPPEE'S POPCORN product." (Compl. ¶ 56.) Plaintiff also alleges that Defendants' actions have caused confusion and deceived purchasers and the public that Plaintiff's product is the Defendants' own. (Compl. ¶ 25.) Plaintiff therefore has alleged that Defendants have used a "name" or a "false designation of origin" ("POPPEE'S POPCORN") which is "likely to cause confusion . . . as to the origin" of their goods, and Defendants' motions to dismiss Counts VII, VIII, and IX, therefore, will be denied.[7]

### *Dilution Claim Under 15 U.S.C. § 1125(c) (Count X)*

Unlike claims under 15 U.S.C. § 1125(a), claims of dilution under the Lanham Act may be brought only by "the owner of a famous mark." 15 U.S.C. § 1125(c)(1); see also Times Mirror Magazines, Inc. v. Las Vegas Sports News, L.L.C., 212 F.3d 157, 163 (3d Cir. 2000)

---

[7]     Defendants do not discuss Counts VII, VIII, and IX separately in their brief, but generally argue that Plaintiff has failed to state a claim under 15 U.S.C. § 1125(a). (See Doc. 9 at 16-18.) Because this Court limits its analysis to Defendants' arguments, the Court offers no opinion regarding whether Plaintiff has stated three separate claims under 15 U.S.C. § 1125(a) as alleged in the Complaint.

(listing elements of a dilution claim under the Lanham Act). Plaintiff has pled that it "manufactured a food product labeled 'MARCI'S OLD FASHIONED KETTLE KORN' . . . that was famous and notorious as a food, brand and product, throughout Ohio and Western Pennsylvania." (Compl. ¶ 5.) Plaintiff's Complaint makes numerous additional references to the name "MARCI'S OLD FASHIONED KETTLE KORN" used on its food product. While the Complaint is not a model of clarity and does not specifically identify the name "MARCI'S OLD FASHIONED KETTLE KORN" as a "mark," this Court finds that the Plaintiff's complaint is sufficient for pleading the existence of a "mark" for a dilution claim.[8] See 15 U.S.C. § 1127 (defining "trademark").

Plaintiff's complaint, however, does not plead whether Plaintiff is the owner of that mark. Because ownership of a mark is required to bring a dilution claim, Defendants' motions to dismiss will be granted as to Count X. Count X will be dismissed without prejudice. If Plaintiff is the owner of the mark "MARCI'S OLD FASHIONED KETTLE KORN," Plaintiff may amend its complaint to allege so.[9]

Breach of Contract Claims (Count II)

In Count II, Plaintiff alleges that Defendants breached their contractual obligations in

---

[8] The Court makes no determinations at this stage regarding whether "MARCI'S OLD FASHIONED KETTLE KORN" is actually a "mark" or whether it is "famous."

[9] Though not raised by Defendants, this Court notes that Plaintiff's Complaint does not identify how Defendants' conduct "diluted" Plaintiff's mark. See 15 U.S.C. § 1127 (defining "dilution"); Times Mirror Magazines, 212 F.3d at 168-169 (discussing factors used to assess dilution by blurring). Plaintiff alleged that Defendants have used the name "POPPEE'S POPCORN," but it is unclear how use of that name could dilute Plaintiff's "MARCI'S OLD FASHIONED KETTLE KORN" mark. If Plaintiff amends its Complaint to reassert its dilution claim, Plaintiff should take care to fully investigate its claim and specify in its Complaint how Defendants' conduct "diluted" Plaintiff's mark.

various ways.  Defendants move to dismiss all breach of contract claims on the grounds that:

1) any claims arising out of the Production Agreement are untimely pursuant to a statute of limitations clause in the contract; 2) the Confidentiality Agreement was superseded by the Production Agreement; and 3) in any event, the Confidentiality Agreement allowed for the sharing of information between Shearer's and Poppee's that Plaintiff challenges.[10]  Plaintiff responds that: 1) Defendants cannot invoke the statute of limitations clause in the Production Agreement because the contract was procured by fraud; 2) the Production Agreement did not supersede the Confidentiality Agreement because the contracts do not contradict one another and it has pleaded fraud in the inducement; and 3) neither agreement allowed Defendants to continue producing the kettle corn product after the contract had been terminated, nor was Shearer's allowed to continue providing Plaintiff's confidential information to Poppee's after terminating the Production Agreement.

The Production Agreement specifically provided that:

> Any action by one party against the other for a cause of action arising under this Agreement must be commenced within one (1) year after the cause of action arises.

(Compl. Ex. 2 ¶ 5.)  Thus, Defendants argue, Plaintiff had until February 11, 2009, to bring any breach of contract action because it was notified on February 11, 2008, that Shearer's was terminating the Production Agreement.  The complaint in this case was not filed until February 11, 2010, or two years after Plaintiff had notice.

---

[10]     Defendants also move to dismiss all allegations regarding breach of a "Purchasing Agreement" because no such contract existed.  Plaintiff explains in its response that "Purchasing Agreement" was a typographical error and that it meant to cite the Production Agreement.  (Doc. No. 30 at 8.)

Under Ohio law,[11] parties to a contract may agree upon a limitations period for claims arising out of a contract and such limitations periods are enforceable if the time limit is reasonable. Universal Windows & Doors, Inc. v. Eagle Window & Door, Inc., 689 N.E.2d 56, 59 (Ohio Ct. App. 1996) (citing Order of United Commercial Travelers of Am. v. Wolfe, 331 U.S. 586 (1947)). Limitations periods of one year have been upheld as reasonable. Id.; see also Ohio Rev. Code § 1302.98(A) (allowing parties to agree to reduce the period of limitations for breach of a sales contract to not less than a year). Pennsylvania law would reach the same result. See 42 Pa. C.S. § 5501(a) (stating that an action must be commenced within the time specified by statute unless "a shorter time which is not manifestly unreasonable is prescribed by written instrument."); Gross v. Fed. Express Corp., 467 F. Supp. 2d 449, 456 (E.D. Pa. 2006) ("It is well-established that a one-year statute of limitations is 'not manifestly unreasonable' under § 5501(a).").

Plaintiff does not dispute the law in this matter. Rather, it argues that, because the Production Agreement was procured by fraud (in that Defendants never intended to fulfill their obligations thereunder), Defendants should be barred from invoking the contractual statute of limitations. It further argues that the fraud provides a defense to an otherwise binding contract or a ground for rescission thereof.

Courts have held that, when a defendant makes a misrepresentation of fact upon which a

---

[11]     Both Agreements indicated that they would be governed by Ohio law. (Compl. Ex. 1 ¶ 6(iii), Ex. 2 ¶ 12(b).) Plaintiff argues that the contracts are subject to reformation because it has alleged fraud and that the choice of law provisions should be stricken. However, it cites no authority in support of this argument. Moreover, as Defendants note, Plaintiff has not identified any conflict between Ohio law and Pennsylvania law with respect to any legal argument addressed in the motions to dismiss and there do not appear to be any actual conflicts with

plaintiff relied reasonably and in good faith which causes the plaintiff to miss a limitations period, the defendant may be barred from asserting the limitations period as a defense. <u>Bryant v. Doe</u>, 552 N.E.2d 671, 674-75 (Ohio Ct. App. 1988); <u>Molineux v. Reed</u>, 532 A.2d 792, 794 (Pa. 1987). However, Plaintiff has not alleged facts to indicate that any allegedly fraudulent conduct by Shearer's caused it to miss the statute of limitations. Rather, the fraud Plaintiff cites occurred before the contract was entered into and while it was in place. Accepting all of Plaintiff's allegations as true, it has not explained why it was not on notice, as of February 11, 2008, that Shearer's was terminating the Production Agreement and thus any breach of contract claim it might potentially have accrued no later than that date.

With respect to the Confidentiality Agreement, Defendants argue that it was no longer in effect because it was superseded by and integrated into the Production Agreement. Specifically, the Production Agreement stated that:

> This Agreement, together with the exhibits attached hereto, contains the entire agreement and understanding of the parties hereto with respect to the matters herein set forth, and all prior negotiations and understandings related to the subject matter of this Agreement are merged herein and are superseded and canceled by this Agreement.

(Compl. Ex. 2 ¶ 12(a).) Ohio recognizes integration clauses and the parol evidence rule, which states that:

> absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements. Despite its name, the parol evidence rule is not a rule of evidence, nor is it a rule of interpretation or construction. The parol evidence rule is a rule of substantive law which, when applicable, defines the limits of a contract.

---

respect to Defendants' statute of limitations argument.

Galmish v. Cicchini, 734 N.E.2d 782, 788 (Ohio 2000) (citations omitted).  Moreover, the court

held that a party may not avoid the parol evidence rule by simply alleging that a statement or

agreement made prior to the contract is different from that which now appears in the written

contract and therefore the written contract was fraudulently induced.  Id. at 790.  Pennsylvania

law is essentially the same.  See Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 525, 436 (Pa.

2004).

Defendants contend that the Production Agreement is an integrated contract and Plaintiff

has not argued otherwise.  Thus, Plaintiff may not rely upon the Confidentiality Agreement to

state a claim.  In addition, Defendants note that the Confidentiality Agreement required Shearer's

to "maintain and preserve the confidentiality of the Confidential Information," including

Plaintiff's "business plans, prospects, operations, financial structure, ideas, product formulations,

and production processes."  (Compl. Ex. 1 ¶ 1.)  Similarly, the Production Agreement required

the parties to keep confidential and limit the release of the parties' proprietary information,

including "business, strategies, pricing, recipes, customers, technology, programs, finances,

costs, employees, marketing plans, developmental plans, computer programs and systems,

inventions, discoveries and trade secrets."  (Compl. Ex. 2 ¶ 8.)  Thus, the agreements governed

the same subject matter and the latter contract superseded the prior one.  Therefore, with respect

to Count II, the motions to dismiss will be granted.

Breach of Duty of Good Faith and Fair Dealing (Count III)

In Count III, Plaintiff alleges that Defendants violated their duty to act in good faith and

to deal fairly.  Defendants argue that no independent cause of action for such an alleged breach

exists under Ohio law.  The Ohio Court of Appeals has held that there is no authority to support

the proposition "that a breach of good faith exists as a separate cause of action from a breach of contract claim. Instead, [the cases cited by the plaintiff] recognize the fact that good faith is part of a contract claim and does not stand alone." Lakota Local Sch. Dist. Bd. of Ed. v. Brickner, 671 N.E.2d 578, 584 (Ohio Ct. App. 1996) (citations omitted).

Pennsylvania law apparently recognizes an independent cause of action for breach of the duty of good faith and fair dealing, at least in very limited circumstances. See Northview Motors, Inc. v. Chrysler Motors Corp., 227 F.3d 78, 91 (3d Cir. 2000) (discussing Pennsylvania law on breach of duty of good faith and fair dealing). "Where a duty of good faith arises, it arises under the law of contracts, not under the law of torts." Heritage Surveyors & Eng'rs, Inc. v. Nat'l Penn Bank, 801 A.2d 1248, 1253 (Pa. Super. 2002) (quoting Creeger Brick and Building Supply, Inc. v. Mid-State Bank and Trust Co., 560 A.2d 151, 153 (Pa. Super. 1989)). Thus, any claim for breach of the duty of good faith and fair dealing must arise from the Production Agreement. Because the statute of limitations, as agreed to by the parties in the Production Agreement, bars Plaintiff's breach of contract claims arising therefrom, this Court need not determine if Pennsylvania law would recognize an independent cause of action for breach of the duty of good faith and fair dealing in this case. Either no independent cause of action exists, or it exists and is barred by the contractual statute of limitations. Therefore, with respect to Count III, the motions to dismiss will be granted.

Counts I, IV, V, and VI and the Economic Loss Rule

In Counts I (misappropriation), IV (intentional misrepresentation, fraud and deceit), V (negligent misrepresentation) and VI (tortious interference with a business relationship), Plaintiff alleges tort-based claims. Defendants argue that these claims are barred by the economic loss

rule.

Under Ohio law:

> The economic-loss rule generally prevents recovery in tort of damages for purely economic loss. <u>See</u> <u>Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.</u> (1989), 42 Ohio St.3d 40, 45, 537 N.E.2d 624; <u>Floor Craft Floor Covering, Inc. v. Parma Community Gen. Hosp. Assn.</u> (1990), 54 Ohio St.3d 1, 3, 560 N.E.2d 206. " '[T]he well-established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable.'" <u>Chemtrol</u>, 42 Ohio St.3d at 44, 537 N.E.2d 624, <u>quoting</u> <u>Nebraska Innkeepers, Inc. v. Pittsburgh-Des Moines Corp</u>. (Iowa 1984), 345 N.W.2d 124, 126. <u>See, also</u>, <u>Floor Craft</u>, 54 Ohio St.3d at 3, 560 N.E.2d 206. This rule stems from the recognition of a balance between tort law, designed to redress losses suffered by breach of a duty imposed by law to protect societal interests, and contract law, which holds that "parties to a commercial transaction should remain free to govern their own affairs." <u>Chemtrol</u>, 42 Ohio St.3d at 42, 537 N.E.2d 624. <u>See, also</u>, <u>Floor Craft</u>, 54 Ohio St.3d at 7, 560 N.E.2d 206, quoting <u>Sensenbrenner v. Rust, Orling & Neale Architects, Inc.</u> (1988), 236 Va. 419, 425, 374 S.E.2d 55. " 'Tort law is not designed * * * to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement. That type of compensation necessitates an analysis of the damages which were within the contemplation of the parties when framing their agreement. It remains the particular province of the law of contracts.'" <u>Floor Craft</u>, 54 Ohio St.3d at 7, 560 N.E.2d 206, <u>quoting</u> <u>Sensenbrenner</u>, 236 Va. at 425, 374 S.E.2d 55.

<u>Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc.</u>, 835 N.E.2d 701, 704 (Ohio 2005). An exception to the economic loss rule is recognized when professionals provide false information for the guidance of others in a business transaction, pursuant to the Restatement (Second) of Torts § 552. But that section "recognizes professional liability, and thus a duty in tort, only in those limited circumstances in which a person, in the course of business, negligently supplies false information, knowing that the recipient either intends to rely on it in business, or knowing that the recipient intends to pass the information on to a foreseen third party or limited class of third persons who intend to rely on it in business." <u>Id.</u> at 705; <u>see also</u> <u>Haddon View Invest. Co.</u>

v. Coopers & Lybrand, 436 N.E.2d 212 (Ohio 1982) (accountant could be held liable for purely economic damages based upon negligent misrepresentations to third parties who were members of a limited class whose reliance the accountant could specifically foresee).

Similarly, Pennsylvania recognizes that the "economic loss doctrine provides [that] no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." Excavation Tech., Inc. v. Columbia Gas Co. of Pa., 985 A.2d 840, 841 n.3 (Pa. 2009) (quotation omitted). Pennsylvania has adopted the § 552 exception with respect to an architect/contractor situation, Bilt-Rite Contractors, Inc. v. The Architectural Studio, 866 A.2d 270 (Pa. 2005), but has refused to extend it to a utility company (sued by an excavator for economic damages when the utility erred in marking the locations of some gas lines), because the utility company did not engage in supplying information to others for pecuniary gain. Excavation Tech., 985 A.2d at 843-44; see also Azur v. Chase Bank, USA, N.A., 601 F.3d 212, 223 (3d Cir. 2010) (credit card company not in the business of providing cardholder with information for pecuniary gain, so cardholder could not invoke § 552 exception).

### Negligent Misrepresentation (Count V)

Count V, which alleges a claim of negligent misrepresentation, is barred by the economic loss rule because it attempts to recover in tort for purely economic losses that are governed by the contract between the parties. Plaintiff argues that the § 552 exception to the economic loss rule applies because it relied to its detriment upon statements made by Shearer's. However, it has not alleged that Shearer's was in the business of providing information to others for pecuniary gain.

On the other hand, Defendants have not demonstrated that the economic loss rule applies to the other tort claims in this case because the claims do not sound in negligence and Plaintiff is

not seeking merely economic losses.

### *Misappropriation (Count I)*

Count I alleges misappropriation of trade secrets and equipment. (Compl. ¶ 37.) Defendants apparently do not challenge the adequacy of the Complaint to the extent it alleges misappropriation of equipment. (See Defs.' Br. 13-15.) This Court, therefore, will limit its analysis to the issues raised by Defendants with respect to Plaintiff's allegations of misappropriation of trade secrets.[12]

Ohio recognizes misappropriation of trade secrets as a tort, such that the economic loss rule does not apply. See Lifelink Pharms., Inc. v. NDA Consulting, Inc., 2007 WL 2292461, at *5 (N.D. Ohio Aug. 7, 2007) (citing Fred Siegel Co., L.P.A. v. Arter & Hadden, 707 N.E.2d 853, 861 (Ohio 1999)).

Pennsylvania courts have also adopted the "gist of the action doctrine," which states that "a claim should be limited to a contract claim when 'the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied in the law of torts.'" Bohler-Uddehom America, Inc. v. Ellwood Group, Inc., 247 F.3d 79, 104 (3d Cir. 2001) (quoting Bash v. Bell Tel. Co., 601 A.2d 825, 830 (Pa. Super. 1992)).[13] However, a claim for

---

[12] To the extent Count I alleges misappropriation of trade secrets, Defendants treat Plaintiff's claim as a cause of action of for misappropriation of trade secrets under Ohio law. (See Defs.' Br. 14.) Plaintiff does not indicate what law applies to Count I. (See Pl.'s Br. at 29-31.) Neither party addresses whether any claim for misappropriation of trade secrets in Count I are distinct from Count XII, which alleges misappropriation of trade secrets under Pennsylvania law. Because neither party has specifically addressed this issue or choice of law for Count I, the Court makes no decisions regarding these issues at this time.

[13] To date, the Pennsylvania Supreme Court has not adopted the gist of the action doctrine, but the Superior Court has "operated under the assumption that the gist of the action doctrine is a viable doctrine that will eventually be explicitly adopted by [the] state's High Court." Reardon

misappropriation of trade secrets "sounds primarily in tort, rather than contract law." Toledo Mack Sales & Service, Inc. v. Mack Trucks, Inc., 530 F.3d 204, 229 (3d Cir. 2008). Thus, Count I is not barred by the economic loss rule under Ohio law or the gist of the action doctrine under Pennsylvania law.

Defendants also argue that Plaintiff has not alleged that Shearer's used its trade secrets after the termination of the Production Agreement, but in fact Plaintiff has alleged that Defendants continued to produce Plaintiff's kettle corn product after terminating the Production Agreement and repackaged the product and sold it as a Poppee's product. In order to do so, Defendants must have used Plaintiff's formula for the kettle corn product and must have used the equipment on which the product was manufactured, acts that were allegedly no longer authorized after the Production Agreement was terminated. Thus, Defendants' motions to dismiss will be denied with respect to Count I.

### Intentional Misrepresentation (Count IV)

Count IV alleges intentional misrepresentation, fraud and deceit which induced Plaintiff to enter the contracts and suffer losses including damage to its brand name. Interpreting Ohio law, a federal court has stated that:

> Fraudulent inducement involves a general duty to avoid wrongful conduct that induces a party to enter into a contract. The contracts, in contrast, impose only duties to meet specific obligations enumerated therein. Because these fraud and contract duties are distinct from one another, the economic loss doctrine is no bar to [the plaintiff's] fraud claim.

Onyx Envtl. Servs., LLC v. Maison, 407 F. Supp. 2d 874, 879 (N.D. Ohio 2005) (citation

---

v. Allegheny College, 926 A.2d 477, 486 (Pa. Super. 2007). The Court of Appeals for the Third Circuit also has taken this view. Bohler-Uddeholm, 247 F.3d at 103-04.

omitted).

The Superior Court of Pennsylvania has held that the gist of the action doctrine does not "bar a fraud claim stemming from the fraudulent inducement to enter into a contract." <u>Sullivan v. Chartwell Inv. Partners, LP</u>, 873 A.2d 710, 719 (Pa. Super. 2005). Therefore, the gist of the action doctrine would not bar Plaintiff's claim that it was fraudulently induced to enter into the Production Agreement.

Defendants also argue that Count IV fails to meet the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure, which provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The Court of Appeals for the Third Circuit has stated that:

> Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." <u>Lum v. Bank of America</u>, 361 F.3d 217, 223-224 (3d Cir. 2004). To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation. <u>See id.</u> at 224.

<u>Frederico v. Home Depot</u>, 507 F.3d 188, 200 (3d Cir. 2007).

Plaintiff has alleged that Shearer's approached it in December 2006 and fraudulently misrepresented that it would produce Plaintiff's kettle corn product to Plaintiff's specifications, all the while intending to destroy Plaintiff's brand name and deprive it of its customers. These allegations are sufficient to withstand a motion to dismiss.

### *Tortious Interference with Business Relationship (Count VI)*

Count VI alleges that Defendants tortiously interfered with Plaintiff's business relationships with its customers, thereby causing Plaintiff to suffer losses that are not co-

extensive with the breach of contract losses asserted.  A court applying Ohio law has held that

"Plaintiff's tort claim does not sound in negligence; it is an intentional tort for tortious

interference with business relations.  The economic loss rule prevents recovery in negligence of

purely economic loss, not recovery under an intentional tort theory for economic loss."

Reengineering Consultants, Ltd. v. EMC Corp., 2009 WL 113058, at *6 (S.D. Ohio Jan. 14,

2009) (citing Chemtrol, 537 N.E.2d at 630-31).  Similarly, the Superior Court of Pennsylvania

has not applied the economic loss theory "if the tortious interference was intentional."  Aikens v.

Baltimore & Ohio R.R. Co., 501 A.2d 277, 278 (Pa. Super. 1985).  Thus, the economic loss rule

does not bar Plaintiff's claim for tortious interference with business relationship.

    Defendants also argue that Plaintiff does not allege that Defendants intentionally

interfered with a business relationship.  Plaintiff alleges that Defendants interfered with

Plaintiff's business relationships with its customers by producing a lower quality of kettle corn

which made the customers refuse to buy the product from Plaintiff.  In addition, Plaintiff has

alleged that Defendants continued to produce the kettle corn product (now relabeled as a

Poppee's product) after terminating the Production Agreement and sold it to the public, thereby

interfering with Plaintiff's relationships with those customers. (See Compl. ¶ 53.)

    Plaintiff, however, does not allege any specific contractual relationship with which

Defendants allegedly interfered.  Plaintiff asserts in its brief that it has stated a claim for tortious

interference with existing contractual relationships under Pennsylvania law.[14]  (Pl.s' Br. (Doc.

---

[14]    Plaintiff's brief is inconsistent because it first asserts that Plaintiff has pled a claim for tortious interference with existing contractual relationships, (Pl.'s Br. at 6-7), but then suggests that Plaintiff has pled a claim for tortious interference with future contracts, (Pl.'s Br. at 13-14). Because the complaint only alleges that Defendants interfered with Plaintiff's existing

30) at 6-7.)  Plaintiff acknowledges that a claim for tortious interference with existing contractual relationships requires the existence of a <u>contractual</u> relationship.  (Pl.'s Br. at 6.)  But Plaintiff's Complaint only vaguely alleges a "relationship" with unidentified "customers."  (Compl. ¶ 53.)  Because Plaintiff's Complaint does not contain sufficient factual information to support a claim for tortious interference with business relationships, Count VI will be dismissed without prejudice.  <u>See</u> <u>Square D Co. v. Scott Elec. Co.</u>, 2008 WL 2096890, at *4 (W.D. Pa. May 16, 2008) (dismissing tortious interference claim for failure to identify specific contractual relationships).  If Plaintiff can allege specific contractual relationships with which Defendants allegedly interfered, Plaintiff will be granted leave to amend its Complaint to make such allegations.[15]

Therefore, with respect to Counts V and VI, the motions to dismiss will be granted, but with respect to Counts I and IV, the motions to dismiss will be denied.

<u>Common Law Unfair Competition</u>

In Count XI, Plaintiff alleges a claim of unfair competition under Pennsylvania common law.  Defendants argue that, like the Lanham Act claims, this claim is legally insufficient because Plaintiff has not alleged that Defendants used any of its trade names or labels.  (Defs.' Br. At 18-19.)  But a Pennsylvania common law unfair competition claim may encompass more than use of

---

relationships with customers (Compl. ¶ 53), the Court will not address claims that Defendants interfered with potential future contracts.

[15]     Neither party has addressed choice of law for Plaintiff's tortious interference claim.  Defendants cite Ohio law, (<u>see</u> Defs.' Br. at 14), while Plaintiff cites Pennsylvania law, (<u>see</u> Pl.'s Br. at 6-7.)  The elements for a tortious interference claim appear to differ under Ohio and Pennsylvania law.  (<u>Compare</u> Defs.' Br. at 14 <u>with</u> Pl.'s Br. at 6.)  This Court need not address choice of law at this time.  In either case, Plaintiff has not alleged any specific contractual relationship, as apparently required by Pennsylvania law, or any specific "business" relationship,

trademarks or trade names.  "A claim of unfair competition encompasses trademark infringement, but also includes a broader range of unfair practices, which may generally be described as a misappropriation of the skill, expenditures and labor of another."  Pa. State Univ. v. Univ. Orthopedics, Ltd., 706 A.2d 863, 867 (Pa. Super. 1998).  Therefore, with respect to Count XI, the motion to dismiss will be denied.[16]

<u>Pennsylvania Trade Secrets Act</u>

In Count XII, Plaintiff alleges that Defendants violated the Pennsylvania Uniform Trade Secrets Act, 12 Pa. C.S. §§ 5301-08 (PUTSA).  Defendants argue that this claim fails because Shearer's released Confidential Information only to Poppee's as permitted under the agreements.  Plaintiff responds that Shearer's had no authority to continue disclosing its Confidential Information to Poppee's once the agreements had been terminated.

Defendants observe that both the Confidentiality Agreement and the Production Agreement allowed Shearer's to share Plaintiff's Confidential Information with its "affiliates," namely Poppee's.  (Compl. Ex. 1 ¶ 1; Ex. 2 ¶ 8.)  However, the Production Agreement provided that: "Upon termination of this Agreement, [Shearer's] shall promptly return to [Plaintiff] all formulae, papers, data, drawings, manuals and materials of any kind which embody any of the Processes subject to this license."  (Compl. Ex. 2 ¶ 7(a).)  Plaintiff has alleged that, after terminating the Production Agreement, Shearer's did not return these materials, but instead

---

as apparently required by Ohio law.

[16]      Plaintiff titled Count IX of its complaint "Unfair Competition/Unjust Enrichment," but unfair competition and unjust enrichment are distinct causes of action.  Based on the allegations in paragraphs 68-70 of the complaint, and the parties' treatment of Count IX as a claim for unfair competition in their briefs on the motions to dismiss, the Court treats Count IX as a claim for unfair competition under Pennsylvania common law.

continued to disclose its Confidential Information to Poppee's and Poppee's continued to produce Plaintiff's kettle corn product (now relabeled as a Poppee's product) for sale by Shearer's.  In addition, Plaintiff has alleged that, as of sometime late in 2007, Shearer's sold Poppee's, so it was no longer an "affiliate" of Shearer's and thus disclosure of its Confidential Information from Shearer's to Poppee's would  no longer have been permitted under the agreements.  The terms of the Production Agreement do not allow for the actions Defendants allegedly took and do not foreclose an action under the PUTSA.  Therefore, with respect to Count XII, the motions to dismiss will be denied.

      For all of the reasons stated above, the Court hereby enters the following:

## II. ORDER

Defendant Shearer's Foods, Inc.'s Motion to Dismiss (**Doc. 8**) is **GRANTED** with respect to Counts II, III, V, VI and X of the Complaint and **DENIED** with respect to Counts I, IV, VII, VIII, IX, XI and XII.

Defendant Poppee's Popcorn, Inc.'s Motion to Dismiss (**Doc. 25**) is **GRANTED** with respect to Counts II, III, V, VI and X of the Complaint and **DENIED** with respect to Counts I, IV, VII, VIII, IX, XI and XII.

Counts II, III, and V are dismissed with prejudice. Counts VI and X are dismissed without prejudice. If Plaintiff intends to file an amended complaint, Plaintiff is granted leave to file an amended complaint with respect to Counts VI and X, as set forth in the above Memorandum, no later than October 22, 2010.


s/ CATHY BISSOON
Cathy Bissoon
United States Magistrate Judge


Dated: October 8, 2010

cc (via e-mail):

All counsel of record.