IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARCI'S FUN FOOD, LLC, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 10-188 |
| SHEARER'S FOODS, INC., | ) ) | Judge Cathy Bissoon |
| Defendant. | ) ) ) | |

**MEMORANDUM AND ORDER**

**I.  MEMORANDUM**

Pending before the Court are Defendant Shearer's Foods, Inc.'s Motion for Summary Judgment (Doc. 73) and Defendant Shearer's Foods, Inc.'s Motion to Strike the Affidavit of Ron Razete (Doc. 85). For the reasons stated herein, the Court will deny Defendant's motion to strike and grant Defendant's motion for summary judgment.

**BACKGROUND**

**A. Factual Background**

Ron and Marci Razete formed Plaintiff Marci's Fun Food LLC in 2001, and began making kettle corn. Def.'s Concise Statement of Material Facts ("Def.'s Facts") ¶ 1 (Doc. 74); Pl.'s Responsive and Supplemental Concise Statement of Facts ("Pl.'s Facts") ¶ 1 (Doc. 80); see also Ron Razete Dep. 18:22-19:24 (Doc. 76-1 at 6). Plaintiff sold kettle corn under the trademark "Marci's Old Fashioned Kettle Korn" in New York, Ohio, Indiana, Pennsylvania and West Virginia. See Ron Razete Dep. 82:8-15 (Doc. 76-1 at 22).

In 2006, Defendant Shearer's Foods, Inc. purchased Poppee's Popcorn, which gave Defendant the ability to manufacture popcorn products. See Kohman Dep. 5:6-25, 7:4-17 (Doc.

1

76-3 at 3). In the fall of 2006, Todd Brahler of Defendant contacted Mr. Razete and offered to produce kettle corn for Plaintiff. Ron Razete Dep. 112:16-113:14 (Doc. 76-1 at 29-30).

On April 17, 2007, Plaintiff and Defendant entered into a Production Agreement, in which Defendant agreed to produce kettle corn for Plaintiff. Production Agreement (Doc. 1-2).[1] In the Production Agreement, Plaintiff granted Defendant "a royalty-free license to the trademarks and to all patents, processes, formulas, technology and know-how (the 'Processes') necessary to enable, and for the sole purpose of enabling, [Defendant] to meet its obligations under this Agreement, such license to be co-extensive with the Term." Production Agreement ¶ 7.a (Doc. 1-2 at 3).

In October 2007, Defendant sold its popcorn business, which became Poppee's Popcorn, Inc. ("Poppee's"). Kohman Dep. 9:21-23 (Doc. 76-3 at 4). Plaintiff continued to purchase kettle corn from Poppee's until April 2009. See Pl.'s Facts ¶ 70 (Doc. 80); Def.'s Facts ¶ 70 (Doc. 74).

Defendant formally terminated the Production Agreement in February 2008 due to Plaintiff's failure to satisfy minimum requirements under the Production Agreement. Kohman Dep. 30:11 – 31:5 (Doc. 76-3 at 7).

**B. Procedural Background**

Plaintiff brought this action against Defendant Shearer's Foods, Inc. ("Shearer's" or "Defendant") and Poppee's, asserting various causes of action related to the failed business relationships between Plaintiff and Shearer's and between Plaintiff and Poppee's. See Compl. (Doc. 1). On motions to dismiss, this Court dismissed certain counts of Plaintiff's complaint,

---

[1] The copy of the Production Agreement attached to Plaintiff's complaint is unsigned, but neither party disputes that the parties agreed to the terms of the Production Agreement.

Memorandum & Order, Oct. 8, 2010 (Doc. 45), and Plaintiff filed an amended complaint (Doc. 49).

Plaintiff's remaining claims are: (1) Misappropriation (Count I); (2) Intentional Misrepresentation, Fraud, Deceit (Count IV); (3) Tortious Interference With a Business Relationship (Count VI); (4) "Passing Off" Under the Lanham Act (Count VII); (5) False Advertising Under the Lanham Act (Count VIII); (6) Violation and/or Usurpation of Common Law Trademark Under the Lanham Act (Count IX); (7) Dilution by Blurring and/or Dilution by Tarnishment Under the Lanham Act (Count X); (8) Unfair Competition/Unjust Enrichment (Count XI); and (9) Violation of Pennsylvania Trade Secrets Act (Count XII). See Am. Compl. (Doc. 49).

Defendant Shearer's filed a motion for summary judgment (Doc. 73) on all remaining claims against it. Plaintiff and Poppee's reached a settlement, and all claims against Poppee's were dismissed with prejudice. Order, July 6, 2011 (Doc. 78). After Plaintiff filed its response (Doc. 79) to the motion for summary judgment, Defendant filed a motion to strike (Doc. 84) the Affidavit of Ron Razete that was included in Plaintiff's summary judgment appendix.

## **ANALYSIS**

To determine what evidence to consider on summary judgment, the Court will first resolve Defendant's motion to strike. Defendant asserts that the Affidavit of Ron Razete (Doc. 82-22) contradicts Mr. Razete's deposition testimony, because the facts identified in Mr. Razete's affidavit were not identified by Mr. Razete during his deposition when he was asked to identify the factual basis for various claims asserted by Plaintiff. Def.'s Br. in Support of Mot. to Strike (Doc. 85). But Mr. Razete's testimony regarding his belief as to which facts support Plaintiff's legal claims does not limit which facts Plaintiff's attorney may rely upon in making legal arguments, and the facts identified in Mr. Razete's affidavit do not contradict any

3

of the facts identified by Mr. Razete during his deposition. The Court, therefore, will deny Defendant's motion to strike and will consider Mr. Razete's affidavit as part of the summary judgment record.

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of identifying portions of the summary judgment record which it believes demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's case. Id. at 325. To survive summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must show that there is a genuine dispute as to a material fact. See id. at 587; Fed. R. Civ. P. 56(c).

### A. Misappropriation (Counts I and XII)

Plaintiff asserts the same cause of action for misappropriation of trade secrets under Pennsylvania law in Counts I and XII of the Amended Complaint.[2] For purposes of Defendant's

---

[2] This Court previously declined to decide whether Counts I and XII of Plaintiff's original complaint asserted distinct causes of action for misappropriation of trade secrets. Memorandum & Order, Oct. 8, 2010, at 18 n.12 (Doc. 45). Plaintiff's brief makes apparent that both Counts I and XII are claims for misappropriation of trade secrets under Pennsylvania law. See Pl.'s Br. 8-11, 13-16. To the extent Plaintiff asserted a claim for "misappropriation" of equipment in Count I, Plaintiff concedes that Defendant purchased the equipment from Plaintiff. See Pl.'s Facts ¶ 32 (Doc. 80); Def.'s Facts ¶ 32 (Doc. 74). Further, Plaintiff did not respond to Defendant's assertion that there is no legal or factual basis to support Plaintiff's claim for "misappropriation" of equipment. See Pl.'s Br. 8-11 (Doc. 81). Thus, summary judgment will be granted in favor of Defendant on Plaintiff's claim for "misappropriation" of equipment.

4

summary judgment motion, Defendant does not dispute that Plaintiff's recipe, production process, and sales strategies constitute trade secrets. Def.'s Br. 6 n.6 (Doc. 75). Defendant contends that Plaintiff cannot establish that Defendant misappropriated any of those trade secrets. Id. at 6-9.

Under the Pennsylvania Uniform Trade Secrets Act ("PUTSA"), 12 Pa. C.S. § 5301, et seq., "misappropriation" includes: "disclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." 12 Pa. C.S. § 5302.[3] Plaintiff's theory of misappropriation appears to be that Defendant was obligated to keep Plaintiff's trade secrets confidential, and that Defendant's sale of its popcorn business constituted a disclosure of those trade secrets without Plaintiff's consent. See Pl.'s Br. 13-16.

Plaintiff, however, identifies no evidence that Defendant made a disclosure "without express or implied consent." 12 Pa. C.S. § 5302. Plaintiff identifies no evidence that Plaintiff objected to Defendant's sale of its popcorn business. See Pl.'s Br. 13-16. Indeed, after Defendant sold its popcorn business in October 2007, Plaintiff continued to purchase kettle corn from Poppee's until April 2009. See Pl.'s Facts ¶ 70 (Doc. 80); Def.'s Facts ¶ 70 (Doc. 74). Thus, there is no genuine dispute that Plaintiff provided at least implied consent for the disclosure of its trade secrets by Defendant to Poppee's.

---

[3] Plaintiff appears to suggest that it may assert a common law claim for misappropriation of trade secrets, but PUTSA displaced Pennsylvania's common law tort for misappropriation of trade secrets. 12 Pa. C.S. § 5308; Bimbo Bakeries USA, Inc. v. Botticella, 613 F.3d 102, 109 n.7 (3d Cir. 2010).

5

Because there is no genuine dispute that Defendant did not "misappropriate" Plaintiff's trade secrets, summary judgment will be granted in favor of Defendant on Counts I and XII of the amended complaint.

### B. **Intentional Misrepresentation, Fraud, Deceit (Count IV)**

Plaintiff's fraud theory is not entirely clear, but appears to be based on allegations that Defendant somehow deceived Plaintiff into entering into the Production Agreement when Defendant's intent was to sabotage Plaintiff's product to eliminate Plaintiff from the market. See Am. Compl. ¶¶ 39-42 (Doc. 49); Pl.'s Br. 11-12 (Doc. 81). The elements of a common law fraud claim are: (1) a representation, (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. Ira G. Steffy & Son, Inc. v. Citizens Bank of Pa., 7 A.3d 278, 290 (Pa. Super. Ct. 2010) (citing Heritage Surveyors & Eng'rs, Inc. v. Nat'l Penn Bank, 801 A.2d 1248, 1250-51 (Pa. Super. Ct. 2002)). Defendant asserts that Plaintiff has not identified any false representations, and that there is no evidence that Defendant acted with fraudulent intent. Def.'s Br. 4-6 (Doc. 75).

As alleged misrepresentations, Plaintiff identifies three pieces of information that Defendant did not disclose to Plaintiff while negotiating the Production Agreement: (1) the $400,000 to $500,000 estimate for reconfiguration of the layout at Defendant's manufacturing facility; (2) mechanical problems endemic to Defendant's manufacturing facility; and (3) the fact that Defendant would have "to clean out Poppee's management team" to make Defendant's manufacturing facility profitable. Pl.'s Br. 11-12 (Doc. 81). Plaintiff has provided evidence that Defendant did not disclose any of this information to Plaintiff. See Ron Razete Aff. ¶¶ 2, 3, 5 (Doc. 82-22). Plaintiff, however, has not provided any evidence that Defendant made any false

6

representations contrary to this information. See Pl.'s Br. 11-12 (Doc. 81); Ron Razete Aff. (Doc. 82-22).

Plaintiff also has not provided any explanation for why Defendant would have been obligated to disclose any of this information to Plaintiff, or why this information would have been material to Plaintiff's decision to enter into the Production Agreement. With respect to the alleged $400,000 to $500,000 estimate to reconfigure Defendant's manufacturing facility and Defendant's opinion that new management might be necessary to make its manufacturing facility profitable, it is unclear why Defendant would have been obligated to disclose its internal operating matters to Plaintiff, or how such matters would be material to Plaintiff's decision to enter into the Production Agreement. With respect to the alleged mechanical problems at Defendant's facility, Ron Razete visited Defendant's facility prior to entering into the Production Agreement, concluded that Defendant's equipment would not make Plaintiff's product, then agreed to sell Plaintiff's manufacturing equipment to Defendant. See Ron Razete Dep. 112:16-119:24 (Doc. 76-1 at 29-31). Any alleged mechanical problems at Defendant's facility, therefore, could not have been material to Plaintiff's decision to enter into the Production Agreement.

Even if Defendant's failure to disclose this information amounted to material misrepresentations, Plaintiff has not identified any evidence indicating that Defendant had intent to mislead Plaintiff. Plaintiff's argument regarding fraudulent intent is unclear, but Plaintiff appears to rely on several e-mails. See Pl.'s Br. 11-12 (Doc. 81). The first is an e-mail from Todd Brahler of Defendant to Tom Donelan of Defendant, sent on November 17, 2006, while the Production Agreement was being negotiated. In that e-mail, Mr. Brahler stated:

> With regard to Marci's, we need to be careful what we tell him.
> He knows that we do not make kettle corn and that we do not know

7

> how to make it. When he originally called, we told him that we
> did not have the equipment to make the product. He quickly
> responded with ""yes you do, because we have the same
> equipment"". Long story short, I do not have a problem with
> eliminating the contract, but we need to be careful what we tell
> him.

E-mail from T. Brahler to T. Donelan (Nov. 17, 2006) (Doc. 82-25). This e-mail is not evidence of fraudulent intent. Plaintiff focuses on the statement, "I do not have a problem with eliminating the contract." See Pl.'s Br. 11 (Doc. 81). The meaning of this statement is unclear, but even drawing all reasonable inferences in Plaintiff's favor, the statement does not suggest that Defendant intended to deceive Plaintiff into entering into the Production Agreement with the intent to sabotage Plaintiff's product and eliminate Plaintiff from the market.

Plaintiff next cites to a string of e-mails with the subject line "Kettle Korn for Frito" from June 2007, two months after Plaintiff and Defendant entered into the Production Agreement. This string of e-mails among various employees of Defendant references potentially shipping kettle corn samples to "Frito." See E-mails (June 1, 2007 to June 4, 2007) (Doc. 82-13). According to Plaintiff, this e-mail string "illustrates motivation to remove the Plaintiff's product from the market." Pl.'s Br. 12 (Doc. 81). But nothing in the e-mail string suggests that Defendant wanted to eliminate Plaintiff from the market. See E-mails (Doc. 82-13). Further, the e-mail string does not indicate anything about Defendant's intent when Defendant negotiated the Production Agreement with Plaintiff.

Plaintiff also notes that it was never informed of any interest Frito had in Plaintiff's product. Pl.'s Br. 12 (Doc. 81); Ron Razete Aff. ¶ 4 (Doc. 82-22). But this does not support Plaintiff's fraud theory. From the limited evidence in the record, the nature of Frito's interest in getting kettle corn samples is entirely unclear. Even assuming Frito was interested in Plaintiff's product, nothing in the record suggests that Defendant was obligated to inform Plaintiff of any

inquiries about Plaintiff's product. Even if Defendant's failure to inform Plaintiff of Frito's alleged interest amounted to a false representation, this occurred after the parties entered into the Production Agreement. Defendant, therefore, could not have made this purported misrepresentation with the intent to mislead Plaintiff into entering the Production Agreement.

Because there is no evidence that Defendant made any false representations to Plaintiff, and because there is no evidence that Defendant had any fraudulent intent in negotiating the Production Agreement, summary judgment will be granted in favor of Defendant on Count IV of the amended complaint.[4]

C. **Tortious Interference With a Business Relationship (Count VI)**

Plaintiff's tortious interference theory, like most of Plaintiff's legal theories, is not entirely clear. Plaintiff's theory appears to be that Defendant fraudulently induced Plaintiff to enter into the Production Agreement in order to gain access to Plaintiff's customers, then secretly sold kettle corn directly to Plaintiff's customers, thereby destroying Plaintiff's relationship with its customers. See Am. Compl. ¶¶ 43-46 (Doc. 49); Pl.'s Br. 12-13 (Doc. 81). According to Plaintiff, after Defendant discontinued distribution of Plaintiff's product, Plaintiff lost Martin's Potato Chip Company, Troyer Cheese, and Strawberry Fields as customers. Pl.'s Br. 13 (Doc. 81); Ron Razete Aff. ¶ 7 (Doc. 82-22).

Under Pennsylvania law, the elements of a cause of action for intentional interference with a contractual relation are: (1) a contractual or prospective contractual relation between the

---

[4] The Court applies Pennsylvania law because the parties apparently agree that Pennsylvania law applies to Plaintiff's fraud claim. See Def.'s Br. 4 (Doc. 75); Pl.'s Br. 11 (Doc. 81). For the same reasons Plaintiff's claim fails under Pennsylvania law, Plaintiff's fraud claim likely would fail under Ohio law. Like a fraud claim under Pennsylvania law, a fraud claim under Ohio law requires a false representation and intent to mislead. See Burr v. Bd. of Cnty. Comm'rs of Stark Cnty., 491 N.E.2d 1101, 1105 (Ohio 1986). As already explained, Plaintiff has not identified any evidence that Defendant made any false representations or that Defendant had any intent to mislead.

complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) absence of privilege or justification on the part of the defendant; and (4) legal damage as a result of the defendant's conduct. Strickland v. Univ. of Scranton, 700 A.2d 979, 985 (Pa. Super. Ct. 1997) (citing Pelagatti v. Cohen, 536 A.2d 1337, 1343 (Pa. Super. Ct. 1987); Small v. Juniata Coll., 682 A.2d 350, 354 (Pa. Super. Ct. 1996)). Defendant asserts that there is no evidence of any actions by Defendant that interfered with any of Plaintiff's existing or prospective business relationships. Def.'s Br. 18-21 (Doc. 75).

After Defendant stopped distributing Plaintiff's product, Plaintiff lost Martin's Potato Chip Company, Troyer Cheese, and Strawberry Fields as customers. Ron Razete Aff. ¶ 7 (Doc. 82-22). Plaintiff, however, has not identified any existing or prospective contractual relationships with those customers. Even assuming that Plaintiff's loss of "customers" means that Plaintiff lost existing or potential contractual relationships with those customers, Plaintiff has not identified any evidence to suggest that its loss of those customers resulted from Defendant's purposeful action, specifically intended to harm Plaintiff's relationships with those customers. See Pl.'s Br. 12-13 (Doc. 81).

Because there is "a complete failure of proof concerning [] essential element[s] of" Plaintiff's tortious interference claim, there is no genuine dispute as to any material fact. Celotex, 477 U.S. at 323. Defendant is entitled to summary judgment on Count VI of Plaintiff's amended complaint.[5]

---

5   The Court applies Pennsylvania law because the parties apparently agree the Pennsylvania law applies to Plaintiff's tortious interference claim. See Def.'s Br. 18-19; Pl.'s Br. 12-13. Plaintiff's claim would likely fail under Ohio law as well. Ohio law on tortious interference appears to provide a broader definition of the tort compared to Pennsylvania law, in that Ohio law is not limited to interference with contractual relationships. See Chandler & Assocs.,

10

## D. Lanham Act Claims (Counts VII, VIII, IX, and X)

### 1. Passing Off (Count VII) and False Advertising (Count VIII)

Lanham Act claims for passing off and false advertising are based on 15 U.S.C. § 1125(a). See Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23 (2003) (analyzing 15 U.S.C. § 1125(a) in reverse passing off case); Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc., 653 F.3d 241 (3d Cir. 2011) (analyzing 15 U.S.C. § 1125(a) in false advertising case).

"Passing off (or palming off, as it is sometimes called) occurs when a producer misrepresents his own goods or services as someone else's. 'Reverse passing off,' as its name implies, is the opposite: The producer misrepresents someone else's goods or services as his own." Dastar, 539 U.S. at 28 n.1 (citations omitted).

To establish a false advertising claim, a plaintiff must prove: (1) that the defendant has made false or misleading statements as to a product; (2) that there is actual deception or a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the advertised goods traveled in interstate commerce; and (5) that there is a likelihood of injury to the plaintiff in terms of declining sales or loss of good will. Pernod Ricard, 653 F.3d at 248 (citing Warner-Lambert Co. v. Breathasure, Inc., 204 F.3d 87, 91-92 (3d Cir. 2000)).

---

Inc. v. America's Healthcare Alliance, Inc., 709 N.E.2d 190, 197-98 (Ohio Ct. App. 1997) (recognizing tort for tortious interference with a "business" relationship, and noting distinction between tortious interference with a contractual relationship and tortious interference with a business relationship). Nonetheless, a tortious interference claim under Ohio law, similar to a claim under Pennsylvania law, requires the defendant to purposely cause a third party to discontinue a business relationship with the plaintiff. See id. at 197. As already explained, Plaintiff has identified no evidence that Defendant did anything to purposely cause Plaintiff's customers to end their relationships with Plaintiff.

Plaintiff's passing off and false advertising theories are unclear, but both appear to be based on the allegation that Defendant and/or Poppee's repackaged Plaintiff's product and sold it as a Poppee's product. See Am. Compl. ¶¶ 47-49, 50-52 (Doc. 49); Pl.'s Br. 16-19 (Doc. 81). Plaintiff's theories based on this allegation appear to be that Defendant committed "reverse passing off" by misrepresenting Plaintiff's product as a Poppee's product, and/or that Defendant made a "false advertisement" by using a Poppee's brand name ("Jenny's") on Plaintiff's product.

With respect to the reverse passing off claim, Defendant asserts that Plaintiff has provided no evidence that Defendant produced or sold kettle corn under any brand name other than Plaintiff's. Def.'s Br. 13 (Doc. 75). With respect to the false advertising claim, Defendant asserts that Plaintiff has provided no evidence to establish either of the first two elements of a false advertising claim (i.e., false or misleading statements and actual deception or tendency to deceive). Def.'s Br. 15-16 (Doc. 75).

The only potentially relevant evidence cited by Plaintiff in response to Defendant's assertions as to both the reverse passing off and false advertising claims is Mr. Razete's testimony that: "And then I believe Shearer's may have actually distributed kettle corn that was not my product after the sale to Poppee's that was under Jenny's brand. I don't know. But it would have been the same product in a different package."[6] Ron Razete Dep. 190:21-191:1 (Doc. 76-1 at 49); see Pl.'s Br. 16-18 (Doc. 81). The meaning of Mr. Razete's testimony is unclear, but even assuming Mr. Razete meant that he believed Defendant was distributing

---

[6] Plaintiff also cites evidence that Plaintiff lost customers after Defendant stopped distributing Plaintiff's product, that Poppee's continues to supply products to Defendant, and that Poppee's markets kettle corn to Plaintiff's former customers. See Pl.'s Br. 16-19. It is unclear how any of this evidence supports Plaintiff's reverse passing off or false advertising claims.

Plaintiff's product under Poppee's "Jenny's" brand name, Mr. Razete's unsupported speculation is not evidence that Defendant sold Plaintiff's product under a Poppee's brand name.

Plaintiff, therefore, has not presented any evidence that Defendant misrepresented Plaintiff's goods as Defendant's own (i.e., that Defendant committed reverse passing off), or that Defendant made a false or misleading statement (i.e., that Defendant made a false advertisement). Further, Plaintiff has not identified any evidence of actual deception or tendency to deceive, which is required to establish a false advertising claim.

Because there is "a complete failure of proof concerning [] essential element[s] of" Plaintiff's reverse passing off and false advertising claims, there is no genuine dispute as to any material fact. Celotex, 477 U.S. at 323. Defendant is entitled to summary judgment on Counts VII and VIII of Plaintiff's amended complaint.

2. Violation and/or Usurpation of Common Law Trademark (Count IX)

The parties appear to agree that Plaintiff's claim for "Violation and/or Usurpation of Common Law Trademark Under Lanham Act U.C.S.A. [sic] 15 § 1125 et. seq [sic]," Am. Compl. 18 (Doc. 49), is a claim for trademark infringement. See Def.'s Br. 13-14 (Doc. 75); Pl.'s Br. 19 (Doc. 81). To prove trademark infringement, a plaintiff must show that: (1) the mark is valid and legally protectable; (2) it owns the mark; and (3) the defendant's use of the mark is likely to create confusion concerning the origin of the goods or services. E.T. Browne Drug Co. v. Cococare Prods., Inc., 538 F.3d 185, 191 (3d Cir. 2008) (citing Freedom Card, Inc. v. JPMorgan Chase & Co., 432 F.3d 463, 469-70 (3d Cir. 2005)).

Defendant asserts that Plaintiff cannot establish the likelihood of confusion prong of a trademark infringement claim. Def.'s Br. 14 (Doc. 75). From Plaintiff's response, the Court cannot discern Plaintiff's theory of trademark infringement. In any event, Plaintiff has not identified any evidence of likelihood of confusion. See Pl.'s Br. 19-22; see also Sabinsa Corp. v.

Creative Compounds, LLC, 609 F.3d 175, 182-83 (3d Cir. 2010) (listing factors that may indicate likelihood of confusion).

Because there is "a complete failure of proof concerning an essential element of" Plaintiff's trademark infringement claim, there is no genuine dispute as to any material fact and Defendant is entitled to summary judgment on Count IX of Plaintiff's amended complaint. Celotex, 477 U.S. at 323.

    3.   Dilution (Count X)

A Lanham Act claim for dilution is based on 15 U.S.C. § 1125(c). To establish a claim for dilution, a plaintiff must prove: (1) the plaintiff is the owner of a "famous" mark; (2) the defendant is making commercial use in interstate commerce of a mark or trade name; (3) the defendant's use began after the plaintiff's mark became famous; and (4) the defendant's use causes dilution by lessening the capacity of the plaintiff's mark to identify and distinguish goods or services. Times Mirror Magazines, Inc. v. Las Vegas Sports News, L.L.C., 212 F.3d 157, 163 (3d Cir. 2000).

Defendant asserts that Plaintiff cannot establish that its "Marci's Old Fashioned Kettle Korn" mark was "famous." Def.'s Br. 10-11 (Doc. 75). "[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). "This is a rigorous standard, as it extends protection only to highly distinctive marks that are well-known throughout the country." Green v. Fornario, 486 F.3d 100, 105 (3d Cir. 2007) (citing TCPIP Holding Co., Inc. v. Haar Commc'ns, Inc., 244 F.3d 88, 99 (2d Cir. 2001)).

Plaintiff's kettle corn sales were limited to New York, Ohio, Indiana, Pennsylvania, and West Virginia. Ron Razete Dep. 82:8-15 (Doc. 76-1 at 22). It is unlikely that a mark associated with a product sold in such a limited geographic region would be "widely recognized by the

14

general consuming public of the United States." 15 U.S.C. § 1125(c)(2)(A); see Green, 486 F.3d at 105, 101 (noting that "it seems several steps short of probable" that former professional athlete with brief career "limited to one team in one area would have a name 'widely recognized by the general consuming public of the United States,'" despite "some name recognition in the greater Philadelphia community"). Further, Plaintiff has not identified any evidence that its "Marci's Old Fashioned Kettle Korn" mark was well-known, even in this limited region.[7] Plaintiff, therefore, cannot establish that its mark was "famous."

Because there is "a complete failure of proof concerning an essential element of" Plaintiff's dilution claim, there is no genuine dispute as to any material fact and Defendant is entitled to summary judgment on Count X of Plaintiff's amended complaint.[8] Celotex, 477 U.S. at 323.

### E. Unfair Competition/Unjust Enrichment (Count XI)

"A claim of unfair competition encompasses trademark infringement, but also includes a broader range of unfair practices, which may generally be described as a misappropriation of the skill, expenditures and labor of another." Pa. State Univ. v. Univ. Orthopedics, Ltd., 706 A.2d 863, 867 (Pa. Super. Ct. 1998) (citing Murphy Door Bed Co. v. Interior Sleep Sys., 874 F.2d 95, 102 (2d Cir. 1989)). As with Plaintiff's other legal theories, Plaintiff's theory of unfair

---

[7] In determining if a mark is "famous," a court may consider: (1) the duration, extent, and geographic reach of advertising and publicity of the mark; (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (3) the extent of actual recognition of the mark; and (4) whether the mark is federally registered. 15 U.S.C. § 1125(c)(2)(A). Plaintiff has not identified any evidence related to any of these factors that would indicate that its mark was famous.

[8] Even if a genuine dispute of material fact existed as to whether Plaintiff's mark was famous, Plaintiff has not presented any coherent theory of how Defendant's conduct diluted Plaintiff's mark. See Pl.'s Br. 22-25.

competition is unclear.[9] Based on Plaintiff's amended complaint, Plaintiff's theory of unfair competition appears to be based on the allegation that Defendant passed off Plaintiff's product as one of Defendant's products. Am. Compl. ¶¶ 61-64 (Doc. 49). As already explained, there is no evidence that Defendant committed reverse passing off. See supra Part D.1.

In its brief, Plaintiff cites a hodgepodge of the same evidence Plaintiff cited in support of its various other claims, along with evidence that Defendant decided to terminate the Production Agreement because Plaintiff's product was not meeting Defendant's sales goals. See Pl.'s Br. 5-8 (Doc. 81). None of the evidence cited by Plaintiff demonstrates any "unfair practices, which may generally be described as a misappropriation of the skill, expenditures and labor of another." Pa. State Univ., 706 A.2d at 867.

Plaintiff has not presented any coherent theory of how the random assortment of evidence cited in its brief could support a claim for unfair competition. See Pl.'s Br. 4-8 (Doc. 81). Summary judgment, therefore, will be granted in favor of Defendant on Count XI of the amended complaint.

**CONCLUSION**

For all of the reasons stated above, Defendant's motion to strike is denied and Defendant's motion for summary judgment is granted.

---

[9] Plaintiff titled Count XI of its amended complaint "Unfair Competition/Unjust Enrichment." The Court previously noted that unfair competition and unjust enrichment are distinct causes of action. See Memorandum & Order, Oct. 8, 2010, at 23 n.16 (Doc. 45). From Plaintiff's brief, it is apparent that Plaintiff is asserting a claim for unfair competition only. See Pl.'s Br. 4-8 (Doc. 75).

16

## II. ORDER

For the reasons stated above, the Court hereby **ORDERS** that Defendant Shearer's Foods, Inc.'s Motion to Strike the Affidavit of Ron Razete (Doc. 85) is **DENIED**, and Defendant Shearer's Foods, Inc.'s Motion for Summary Judgment (Doc. 73) is **GRANTED**.

**IT IS SO ORDERED**.

s/ Cathy Bissoon
Cathy Bissoon
United States District Judge

November 7, 2011

cc (via e-mail):

All counsel of record.